**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILFREDO DAVILA,

     Petitioner,

  – against –

UNITED STATES OF AMERICA,

     Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**07-CV-1320 (JBW)**

**MEMORANDUM, ORDER & JUDGMENT**

U.S. ★ MAR 31, 2008 TIME A.M. E.D.N.Y.

JACK B. WEINSTEIN, Senior United States District Judge:

## I.   Introduction

Petitioner Wilfredo Davila is not atypical of a defendant in our criminal justice system: he is from a broken family, scarred from childhood episodes of domestic violence, exhibiting symptoms of some mental retardation, addicted to heroin since adolescence, and a repeat offender who has served a significant part of his life in prison to support his drug addiction. While the criminalization of drugs without adequate drug courts and treatment does not sufficiently address the underlying causes of crime and the public's interest in prevention and deterrence, defendant's firearm offense marks him as a severe danger to society.

On December 6, 2007, Davila was sentenced to a term of 70-months imprisonment following his acceptance of a plea agreement to one count of felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He now moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence on the basis of ineffective assistance of counsel. In his <u>pro se</u> petition and supplemental papers filed by appointed habeas counsel, he alleges that counsel: (1) provided him with incorrect information regarding his sentence exposure; (2) failed to properly investigate his criminal history before entering into a plea agreement; (3) did not request a

1



psychiatric evaluation for him before the guilty plea; (4) advised him to enter into a plea agreement which provided no benefit and required him to relinquish his right to appeal; (5) failed to ensure that he understood the terms of the plea agreement; and (6) failed to perfect an appeal.

An evidentiary hearing was held on February 7, 2008. For the reasons set forth below, the petition is denied in part and, on consent of the government, granted in part.

Counsel's representation did not fall below an objective standard of reasonableness on the first five grounds listed above. There is no reasonable probability that the result of the sentencing proceedings—the term of 70-months imprisonment actually imposed (when the guidelines recommended 70 to 87 months)—would have been different if counsel did not make any of the errors attributed to her by petitioner; there was no prejudice.

Counsel's failure in perfecting an appeal does constitute ineffective assistance for which no showing of prejudice is required. The appropriate remedy for this constitutional violation is to reinstate Davila's appeal to the Court of Appeals for the Second Circuit. Court-appointed habeas counsel is directed to assist Davila in perfecting the appeal. A certificate of appealability is denied.

## II.     Facts and Procedural History

### A.     *Davila's Background and Criminal History*

Davila was born in Puerto Rico in 1967. See Presentence Report dated June 1, 2005 ("PSR") ¶ 35. At the age of seven, he found his mother's body after she was killed by her third common-law husband. Id. Davila has not had any contact with his father since the age of thirteen when he relocated to New York City to live with his maternal uncle. See Davila's Supplemental Memorandum in Support of Motion dated Nov. 1, 2007 ("Davila's Supp.

2

Memo."), Docket Entry for 07-CV-1320 ("Civil Docket Entry") No. 17. From that time onwards, Davila began using a multitude of drugs and eventually became addicted to heroin. Id. at 3. He stopped attending school regularly after the seventh grade. See PSR ¶ 61. Spanish is his native language. He has only a limited understanding of English. Id.

Davila has engaged in criminal activity since he was a teenager, mostly to support his drug addiction. The PSR summarizes his state court convictions:

|  | **Date of Arrest** | **Offence/Court** | **Disposition** | [ ] |
|---|---|---|---|---|
| 18. | 1/23/84 (Age 16) | Criminal Mischief/ Supreme Court Queens, New York | 5/25/89 6 months custody | |
| . . . . | | | | |
| 20. | 8/29/90 (Age 23) | Attempted Criminal possession of a Weapon / Supreme Court Brooklyn, New York | 7/2/91 4 months custody; 5 years probation 7/2/91 Released to Probation 11/1/95 Probation violated Re-sentenced to 9 years custody | |
| . . . . | | | | |
| 22. | 3/12/92 (Age 24) | Attempted Criminal Sale of a Controlled Substance / Supreme Court Brooklyn, New York | 4/24/92 60 days custody; 5 years probation 8/15/95 Re-sentenced to 1 year custody | |
| . . . . | | | | |
| 24. | 6/26/95 (Age 28) | Criminal Sale of a Controlled Substance / | 11/1/95 9 years custody | |

3

|  |  |  |
|--|--|--|
| Supreme Court<br>Brooklyn, New York | | 11/28/95<br>Committed to<br>Ulster Correctional<br>Facility<br><br>6/15/01<br>Paroled<br><br>6/15/04<br>Discharge –<br>Maximum Expiration |

Id. at ¶¶ 18-24.

His other arrests include:

|  | Date of<br>Arrest | **Charge/Court** | **Disposition** |
|--|-------------------|------------------|-----------------|
| 28. | 4/8/91<br>(Age 23) | Criminal Possession of<br>a Controlled Substance<br>(2 Counts), Loitering<br>Unlawfully While Using<br>a Controlled Substance /<br>Criminal Court<br>Brooklyn, New York | 1/26/05<br>Adjourned in<br>Contemplation of<br>Dismissal<br><br>1/31/05<br>Dismissed |
| . . . . | | | |
| 30. | 1/25/92<br>(Age 24) | Assault (2 Counts),<br>Resisting Arrests,<br>Disorderly Conduct /<br>Criminal Court<br>Brooklyn, New York | 8/30/95<br>Adjourned in<br>Contemplation of<br>Dismissal |
| . . . . | | | |
| 32. | 1/25/05<br>(Age 38) | Criminal Possession of a<br>Weapon (3 Counts),<br>Resisting Arrest /<br>Criminal Court<br>Brooklyn, New York | 1/31/05<br>Dismissed |

Id. ¶¶ 28-32.

**B.** *Instant Charges*

*1.* *The Crime*

On the evening of January 25, 2005, New York Police Department ("NYPD") officers stopped a car in which Davila was riding as a passenger. Id. ¶ 2. While an officer spoke to the driver, Davila began to rock back and forth, prompting another officer to open the passenger side door and question him. Id. Davila exited the car without the officer's order or permission. Id. In attempting to return him to the car, the officer placed her hand on Davila's waist and felt what she believed to be a firearm. Id. After a brief struggle, the officer retrieved the gun, a .380 caliber pistol, and a five round magazine from his right coat pocket and a six-inch dagger from his boot. Id.

While being read Miranda warnings, Davila made "spontaneous" statements to one of the officers: "they got me before I had a chance to sell the gun. I stole that gun from a drug dealer. I saw where he put it and then I took it to sell and go buy drugs. . . . I'm sorry I fought with you, but I had a gun in my pocket and I didn't know what to do. No hard feelings." Id. ¶ 3. Davila was initially charged in Kings County Criminal Court with three counts of Criminal Possession of a Weapon and one count of Resisting Arrest. Id. ¶ 32-33.

A federal complaint was filed on January 27, 2005, and the state charges were later dismissed. See Complaint, Criminal Case 05-CR-138, Docket Entry ("Criminal Docket Entry") No. 1. Counsel was retained on January 31, 2005. See Notice of Appearance, Criminal Docket Entry No. 3. On February 23, 2005, a federal Grand Jury returned an indictment charging Davila with possession of a firearm while having previously been convicted of a crime punishable by a

term of imprisonment exceeding one year. <u>See</u> Indictment, Criminal Docket Entry No. 8.

2.    *Plea Agreement*

A plea agreement was signed on April 20, 2005. Davila agreed to plead guilty to the one-count indictment. The agreement waived his right to appeal or collaterally attack his conviction: "[t]he defendant agrees not to file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a term of imprisonment of 78 months or below." <u>See</u> Plea Agreement, attached as Ex. 3 to Government's Memorandum in Opposition to Davila's Motion, Civil Docket Entry No. 7.

Davila pled guilty before the magistrate judge. When questioned by the court about his competency, his responses indicate that he understood the nature of the proceedings against him:

| | |
|---|---|
| The Court: | Did you take any medication of any kind within the last 24 hours? |
| [Davila]: | No. |
| The Court: | All right. I know it's unlikely but did you but have you had any alcoholic beverages to drink in the last 24 hours. |
| [Davila]: | No, not that either. |
| The Court: | Now, is your mind clear as you sit here? |
| [Davila]: | Yes. |
| The Court: | [Defense counsel], I presume you've discussed with Mr. Davila the question of entering a guilty plea. |
| Defense Counsel: | Yes, Judge, I have. |
| The Court: | In your view, does he understand the rights that he'll be waiving by pleading guilty? |
| Defense Counsel: | He does. |
| The Court: | Do you have any question as to his competency to proceed |

6

today?

Defense Counsel:    No, I have no questions.

Tr. Pleading at 9-10.

When questioned about his communications with counsel, although Davila had some

trouble in understanding, it was clear that he was able to consult with counsel with a reasonable

degree of rational understanding:

| The Court: | In your conversation with your attorney, have you been able to understand what she's explained to you about the charges and about the options that are available to you as you face these charges? |
|---|---|
| [Davila]: | Yes, partly so; yes. |
| The Court: | And have you had some difficulty in communicating with your attorney? |
| [Davila]: | A little bit. |
| The Court: | All right. Ms. Rosenthal? |
| Defense Counsel: | Yes. |
| The Court: | Have you communicated with your client in Spanish or with an interpreter? |
| Defense Counsel: | Well, some of it has been in – through an interpreter. My client speaks a little bit of English and my partner, who is Spanish speaking, has also been with us when we've discussed this. |
| The Court: | In your conversation with Mr. Davila, were you able to communicate effectively with him? |
| Defense Counsel: | I believe that I was; yes. |
| The Court: | Mr. Davila, were there any particular matters that you do not feel you were able to understand completely in your discussion with you attorney? |

| [Davila]: | No, I've understood. |
| --- | --- |
| The Court: | You've understood what she has explained to you? |
| [Davila]: | No, what is it that you said? I didn't – |
| The Court: | Well, I asked you a . . . if you had had any difficulty in understanding what you attorney had explained to you about the charges and about your rights and about the options that are available to you as you face the charges. That was the questions I asked you. Do you recall that I asked you that question a few moments ago? |
| [Davila]: | Yeah. |
| The Court: | Okay. And you said that you had some difficulty. |
| [Davila]: | A little bit because I don't understand some things. |
| The Court: | I see. But then were you able to obtain further information so that you are able to understand what your attorney was explaining to you? |
| [Davila]: | Yes. |
| The Court: | Okay. |

Tr. Pleading at 4-6.

Davila informed the court that he understood the plea agreement and its consequences

regarding his appeal:

| The Court: | Before you signed the document, did someone translate the document for you? |
| --- | --- |
| [Davila]: | Yes. |
| The Court: | Did you discuss the various terms of this agreement with your attorney? |
| [Davila]: | Yes. |
| The Court: | Do you understand all of the terms in this agreement? Do you understand everything written in this agreement? |

8

| [Davila]: | Yes. |

. . . .

| The Court: | Now, after sentence is imposed, if [you] think [the sentencing judge] . . . has made a mistake in imposing the sentence and if your sentence exceeds 78 months of imprisonment, then you have the right to appeal your sentence to a higher court to ask that court to correct any error that this court may make. |
| | Do you understand that? |
| [Davila]: | Yes, your Honor. |
| The Court: | I also want to make it clear that you have also agreed to give up your right to appeal to a certain extent because of your plea agreement. And what I mean by that is that if you didn't have a plea agreement, you could appeal any sentence that you thought the Court made in error. |
| | But because of your plea agreement, if the sentence is 78 months of imprisonment or less, you cannot appeal that sentence even if you think the Court made a mistake in imposing that sentence because that's part of the agreement you've made with the government. |
| | Do you understand that? |
| [Davila]: | Yes. |

Tr. Pleading at 17-24.

The court explained the Sentencing Guidelines and their effect on the final sentence:

| The Court: | Do you understand what I have explained to you about the guidelines? |
| [Davila]: | Yes. |
| The Court: | And do you recall having a conversation about this subject with your attorney? |
| [Davila]: | Yes. |

9

Tr. Pleading at 20-21.

3.    *Sentencing*

On November 9, 2005, this court held its first hearing with regard to Davila's sentencing. Defense counsel was directed to provide the court with a brief addressing Davila's background and a recommendation for rehabilitation. See Transcript of Nov. 9, 2005 Hearing, Criminal Docket Entry No. 25.

Counsel submitted a six-page sentencing memorandum on November 21, 2005 recommending a 12-month sentence. See Davila's Sentencing Memorandum dated Nov. 21, 2005 at 6, Criminal Docket Entry No. 15. The memorandum focused on Davila's personal history, detailing the violent death of his mother and his ongoing drug addiction. Id. at 5. It noted that Davila's "personal history suggests one of great trauma suffered at an early age, with both emotional and psychological consequences, which resulted in a very unstable and insecure life during his early teens. This trauma most likely was the basis for his extensive drug abuse." Id. at 5. It listed as factors for this court's consideration that Davila had already served 10 months of his prospective sentence, that he was remorseful, that he had little formal schooling, and that he was gainfully employed prior to his arrest and was likely to regain employment following his release. Id. at 6.

A sentencing hearing was held on December 6, 2005. See Tr. Sentencing. The proceeding was also videotaped in order to develop an accurate record of the courtroom atmosphere during sentencing and the various in-court factors and considerations that a district court must evaluate in imposing a sentence under 18 U.S.C. § 3553(a). See Sentencing Videotape, received in evidence at the Feb. 7, 2008 Evidentiary Hearing; Transcript of

Evidentiary Hearing ("Tr. Evid. Hr.") at 20, Civil Docket Entry No. 24.

Pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(2), the PSR had set Davila's initial base offender level at 24 because of two prior felony convictions for either a crime of violence or a controlled substance offense. See PSR ¶ 8. There were two additional upward adjustments of two and four points since the weapon was stolen and Davila admitted that he planned to sell it to buy drugs. Id. at ¶¶ 9-10. A final downward adjustment of three points for acceptance of responsibility set the total offense level at 27. Id. at ¶ 15. Davila's criminal history category was found to be at level IV. The recommended imprisonment range was 100 to 120 months. Id. at ¶ 75.

The offense level and recommended imprisonment range were adjusted at sentencing. The government agreed with defense counsel that the Probation Department's proposed four-point enhancement pursuant to U.S.S.G. § 2K2.1(b)(5) was not applicable. See Transcript of Sentencing ("Tr. Sentencing") at 7, Criminal Docket Entry No. 25. Without objection, the court assigned a base offense level of 23 and a criminal history category of IV, which yielded a guideline range of 70-87 months imprisonment. See Tr. Sentencing at 7.

The court confirmed that Davila was competent and satisfied with his attorney:

| The Court: | Have you read the presentence report and had it explained to you by your attorney? |
| --- | --- |
| [Davila]: | Yes. |

. . . .

| The Court: | Are you satisfied with your attorney? |
| --- | --- |
| [Davila]: | Yes. |

. . . .

11

| The Court: | The Court observes the defendant's demeanor. He appears to be capable of understanding these proceedings. Does counsel agree? |
|---|---|
| [Defense Counsel]: | Yes. |

Tr. Sentencing at 3-4.

The court inquired about Davila's guilty plea before the Magistrate Judge and accepted his plea of guilty:

| The Court: | Will the defendant please read the transcript of April 20, 2005 and tell me if it's correct. |
|---|---|
| | (Counsel and client confer) |
| [Defense Counsel]: | It appears to be correct. Yes, Judge. |
| The Court: | Is that right, sir? Did you get a chance to read it? |
| [Davila]: | Yes. |
| The Court: | Is it right? |
| [Davila]: | Yes. |
| The Court: | Did anybody make any threats or promises to induce you to plead guilty? |
| [Davila]: | No. |
| The Court: | Was everything you said there correct and stated without coercion? |
| [Davila]: | Yes. |
| The Court: | Do you wish to plead guilty? |
| [Davila]: | Yes. |
| The Court: | How do you plead; guilty or not guilty? |
| [Davila]: | Yes, I am guilty. |

| The Court: | Do[] [you] plead guilty or not guilty? |
|---|---|
| [Davila]: | Yes, guilty. |
| The Court: | Based on the information before me, I accept the plea. . . . |

Id. at 5.

The court also confirmed that Davila knew about his limited right to appeal:

| The Court: | Is his right to appeal limited? |
|---|---|
| [Gov. Counsel]: | Yes, your Honor. |
| The Court: | Have you explained that? |
| [Defense Counsel]: | Yes. |
| The Court: | Do you understand that? |
| [Davila]: | Yes. |

Id. at 9.

Davila was sentenced to a term of 70-months imprisonment, three years supervised release, id. at 15, and a $100 special assessment. Id. at 8. No fines were imposed because defendant's lack of assets. Id.

4.    *Appeal*

Although he already had waived an appeal in the plea agreement, by papers dated December 7, 2005, Davila filed a notice of appeal in the district court clerk's office. See Davila's Notice of Appeal dated Dec. 7, 2005, Criminal Docket Entry No. 21. On February 1, 2006, the Court of Appeals for the Second Circuit issued what appears to be a form scheduling order setting dates for briefing and oral arguments. See Court of Appeals for the Second Circuit Docket Entry for 06-0234cr ("2d Cir. Docket Entry") dated Feb. 1, 2006. Defense counsel

requested to be relieved from the case on May 17, 2006. See Motion to be Relieved, 2d Cir. Docket Entry dated May 17, 2006.

On May 23, 2006, the Court of Appeals for the Second Circuit denied counsel's motion "without prejudice to renew upon submission of completed CJA 23 by appellant." See Order, 2d Cir. Docket Entry dated May 23, 2006. Davila's appeal was dismissed by the Court of Appeals on December 21, 2006 for failing to file a brief. See Order, 2d Cir. Docket Entry dated Dec. 21, 2006.

## C.    *Instant Petition*

Davila moves pursuant to 28 U.S.C. § 2255 to vacate this court's 70-month sentence claiming ineffective assistance of counsel. See Davila's § 2255 Petition dated March 18, 2007, Civil Docket Entry No. 1. Counsel was appointed. See Order dated April 4, 2007, Civil Docket Entry No. 4. After several adjournments sought by the government and petitioner, an evidentiary hearing was held on February 7, 2008 at which Davila was produced. See Order dated Dec. 21, 2007, Civil Docket Entry No. 22; Tr. Evid. Hr. See also 28 U.S.C. § 2243 (para. 5) ("Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.").

Davila raised four grounds for relief in his pro se petition: (1) counsel provided him wrong information regarding his sentence exposure; (2) counsel failed to properly investigate his criminal history before entering into a plea agreement; (3) counsel did not request a psychiatric evaluation for him before the guilty plea; and (4) counsel failed to perfect an appeal. See Davila's § 2255 Petition at 5. Habeas counsel filed a supplemental brief on November 1, 2007 and raised two additional grounds: (1) counsel failed to advise Davila about the plea agreement

14

which provided no benefit and required him to relinquish his right to appeal; and (2) counsel failed to ensure that Davila understood the terms of the plea agreement. <u>See</u> Davila's Supp. Memo. at 3.

In an affidavit accompanying his petition, Davila states that counsel was aware of his drug addiction and advised him that "under the circumstances, [his] best chance was to plead guilty, [and] that she will get [him] a sentence of one to five years probation." <u>See</u> Davila's Affidavit ¶¶ 3-4 dated March 18, 2007, Civil Docket Entry No. 1. He stated that even though he "didn't clearly understand the judicial procedures, [he] plead [sic] guilty to a charge of felon in possession of a firearm." <u>Id.</u> ¶ 5. According to Davila, he filed a <u>pro se</u> notice of appeal and told his counsel to withdraw representation. Id. at ¶ 10. He then received a letter from the Court of Appeals for the Second Circuit notifying him that the appeal was dismissed for failure to prosecute. <u>Id.</u> at ¶ 12.

The court had required habeas counsel to have petitioner's trial counsel available for the February 7, 2008 evidentiary hearing. <u>See</u> Order dated Dec. 12, 2007, Civil Docket Entry No. 22. Trial counsel was present at the hearing but was not called as a witness by either petitioner or the government. <u>See</u> Tr. Evid. Hr. at 30. On June 19, 2007, trial counsel provided the government with an affirmation responding to the ineffective assistance of counsel claim. <u>See</u> Affidavit dated June 19, 2007, attached as Ex. 4 to Government's Response ("Gov. Resp."), Civil Docket Entry No. 7. Rules of evidence governing collateral attacks on convictions permit consideration of evidence that might otherwise be inadmissible. Sections (b) and (c) of Rule 7 of the Rules Governing Section 2255 Cases allows for the consideration of sworn statements if an opportunity to admit or deny its contents is given to the opposing party. <u>See</u> Rule 7 of Rules

15

Governing Section 2255 Cases. The court credits the statements in trial counsel's affirmation as credible even though she did not testify at the evidentiary hearing. Trial counsel was present and petitioner had an opportunity to impeach her credibility.

Counsel stated in her affirmation that that she "met personally with Davila prior to his April 20, 2005 guilty plea on at least six separate occasions. During these meetings, a Spanish interpreter was present and [she] had meaningful conversations with Davila regarding his defense and [her] representation." See Affidavit dated June 19, 2007 at ¶ 5. She states that she met with Davila to review the plea agreement and the PSR. Id. at ¶¶ 6, 9. A Spanish interpreter translated the documents at these meetings. Id. ¶ 6, 9. According to counsel, she advised Davila about his sentence exposure under the guidelines, did not make any promises about a potential sentence, id., and informed him about the waiver of the right to appeal. Id. at ¶ 7.

Habeas counsel also submitted an affirmation which appears to challenge trial counsel's assertions that she visited Davila in jail. See Affirmation dated Oct. 31, 2007 ¶ 6, Civil Docket Entry No. 17. Habeas counsel did not challenge trial counsel's assertions or credibility by examining her as a witness at the February 7, 2008 evidentiary hearing. The court credits trial counsel's assertion that she visited Davila repeatedly and advised him about his sentence exposure and waiver of the right to appeal.

A clinical neuropsychologist conducted a neuropsychological assessment of Davila. See Neuropsychological Assessment dated Oct. 15, 2007. The test results revealed that Davila has a full scale I.Q. of 72 and a verbal comprehension index of 68. Id. at 4. The examining physician found that Davila's verbal language processing abilities in the areas of abstract reasoning, verbal

knowledge base and language decoding in Spanish and English are mildly impaired. Id. He

concluded:

> Taken together, it is my opinion that, within a reasonable degree of
> neuropsychological/medical certainty, the presence of a language disorder (mental
> retardation level performance), reading disability, and post-traumatic stress disorder
> significantly undermined Mr. Davila's capacity to understand the . . . [plea
> agreement].

Id. at 8.

Davila was the only witness to testify at the February 7, 2008 evidentiary hearing. After

extensive questioning by the court, the government and habeas counsel, the court found that

Davila understood the nature of the proceedings and was competent. See Tr. Evid. Hr. at 2-7.

The court does not believe Davila's statement about whether he was advised of his sentence

exposure and waiver of the right to appeal. The human mind and memory is flexible, tending to

hide even from itself, its own grave errors of judgment. Thus, even if he does believe now that

he was not properly advised by counsel, it is highly probable that his belief is incorrect.

### III.    Ineffective Assistance of Counsel

#### A.    *Law*

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall

enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

This right to counsel is "the right to effective assistance of counsel." McMann v. Richardson,

397 U.S. 759, 771 n.14 (1970) (emphasis added). The Supreme Court has explained that in

giving meaning to this requirement courts must be guided by its purpose—"to ensure a fair

trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," id. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id. at 697. In evaluating the prejudice suffered by a petitioner as a result of a counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." Lindstadt v. Keane, 239 F.3d 191, 202 (2d Cir. 2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, 466 U.S. at 696. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Purdy v. Zeldes, 337 F.3d 253, 260 (2d Cir. 2003) (quoting Strickland, 466 U.S. at 694) (footnote omitted). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. See Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003).

18

As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690–91. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under Strickland's prejudice prong. See Pavel v. Hollins, 261 F.3d 210, 223 (2d Cir. 2001) (finding counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); Lindstadt, 239 F.3d at 201 (same). The Court of Appeals for the Second Circuit has implied that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. See Eze, 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for . . . counsel's decisions").

## B.  *Application of Law to Facts*

### 1.  *Plea Agreement and Sentencing*

Davila contends that counsel failed to properly investigate the plea agreement before recommending that he plead guilty. He alleges that counsel's failure to properly research the federal guidelines and investigate the plea agreement makes her recommendation to plead guilty to the indictment ineffective assistance. Nothing in the record suggests that counsel's advice

19

could be deemed professionally unreasonable in light of the circumstances. The evidence against Davila was ample and convincing: it consisted of the gun and ammunition found in his possession during the arrest, testimony from police officers regarding their observations, and Davila's incriminating statements upon arrest. Davila has three previous felony convictions, all of which satisfy the requirement of 18 U.S.C. § 922(g). After an analysis of the evidence and her client's criminal history, counsel's recommendation to plead guilty was a reasonable strategic choice. The court utilized a reduced guideline range because of defendant's cooperation in relieving the government of the burden of a trial.

Under Strickland analysis, strategic choices made by counsel after an investigation of the facts and the law are "virtually unchallengeable." Strickland, 466 U.S. at 690-91. Davila bears the burden of overcoming the presumption that, under these circumstances, the challenged action might be considered sound legal strategy. Strickland, 466 U.S. at 689. He has not overcome this legal presumption.

Davila's contention that counsel did not understand the effect of the guidelines and the plea agreement on his sentence is without merit. The plea agreement provided an estimated base offense level of 24, which was correctly calculated under U.S.S.G. §§ 2K2.1(a)(2) and 2K2.1(b)(4). Counsel's failure to raise any meritless challenge to the original calculations does not constitute ineffective assistance.

Davila argues that counsel failed to fully explain the plea agreement. On the contrary, during the plea hearing before the magistrate judge, Davila explained to the court that he had reviewed the agreement and was satisfied with his counsel. The court also ensured that Davila understood the plea agreement and its consequences. He informed the court that the plea

20

agreement had been translated for him into Spanish, that he understood the potential punishment that he faces for the offense, and that he understood the effects of the sentencing guidelines on his final sentence. There is no evidence to suggest that counsel failed to review the sentencing guidelines or to discuss the consequences of a guilty plea with him. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). See also Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003) ("In most circumstances, a convicted felon's self-serving testimony is not likely to be credible."); Pitcher v. United States, 371 F. Supp. 2d 246, 257 (E.D.N.Y. 2005) ("[Self-serving, post conviction claims regarding counsel's advice, without some further evidence, are generally insufficient to establish ineffectiveness.");

## 2. *Presentence Report*

Davila alleges that counsel did not investigate the PSR or challenge its authenticity. His contention that his criminal history was not corroborated by New York State Court records is rejected. The Probation Department had obtained a copy of the Certificate of Disposition for each of Davila's three previous convictions. See PSR, ¶¶ 19, 21, and 23. Counsel's failure to challenge the PSR's authenticity does not constitute ineffective assistance. Testimony and other evidence from the sentencing proceeding demonstrate that the PSR was sufficiently reviewed and explained by counsel. Davila testified that he had read the PSR and had it explained to him by his attorney.

Trial counsel also raised concerns regarding the offense level provided in the PSR. The PSR had included a four-point enhancement which was contested by counsel and ultimately removed before the final sentence was imposed. These efforts by counsel contradict Davila's

contention that counsel failed to investigate or challenge the PSR.

### 3. Guilty Plea and Competency

Davila's contentions that counsel was ineffective in not requesting a competency hearing, and that due to his alleged incompetence, he did not knowingly and voluntarily plead guilty are discussed below. Counsel was not ineffective in her failure to request a competency hearing because Davila had sufficient present ability to consult with counsel with a reasonable degree of rational understanding and had a rational and factual understanding of the proceedings. See United States v. Diaz, 176 F.3d 52, 113 (2d Cir. 1999) (finding no violation of Strickland where attorney did not present evidence that a client had been diagnosed as incompetent where other evidence suggested that client was feigning incompetence).

## IV. Guilty Plea and Competency

Davila argues that his guilty plea was not knowing and voluntary, and therefore, should be set aside. He insists that counsel should have requested a psychiatric evaluation before the plea hearing because of his psychological problems and serious drug abuse.

### A. Knowing, Voluntary and Intelligent Plea

A "plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). A plea is voluntary when the individual is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," unless "induced by threats . . . misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper." Brady, 523 U.S. at 755. A guilty plea cannot be considered intelligent unless a defendant

22

receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Bousley, 523 U.S. at 618 (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).

The court may not accept a plea "without an affirmative showing that it was intelligent and voluntary." Boykin v. Alabama, 395 U.S. 238, 242 (1969). The appropriateness of the plea can be reviewed by examining the totality of the relevant circumstances. Willbright v. Smith, 745 F.2d 779, 780 (2d Cir. 1984) (per curiam) (citing Brady, 397 U.S. at 749). A defendant's subjective ideas or statements produced by conversations with counsel without "substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea." United States ex rel. Curtis v. Zelker, 466 F.2d 1092, 1098 (2d Cir. 1972) (citations omitted). Claims that guilty pleas were "induced by discussions" with counsel regarding the final sentence "have repeatedly been held insufficient to warrant the issuance of a writ." Curtis, 466 F.2d at 1098. The petitioner bears the burden of showing "that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justified his mistaken impression." Scales v. N.Y. State Division of Parole, 396 F. Supp. 2d 423, 433-34 (S.D.N.Y. 2005) (quoting Curtis, 466 F.2d at 1098).

Davila has not met the burden of showing, objectively, that he was induced to plead guilty due to reliance upon misinformation from counsel. During the plea hearing on April 20, 2005, counsel explained that petitioner had been notified and understood the consequences of pleading guilty. Davila informed the magistrate judge that he was knowingly and voluntarily pleading guilty and that he understood all terms of the agreement. He testified that no threats or promises were being made to induce him to plead guilty. There is no evidence suggesting that

23

counsel induced petitioner's guilty plea.

Davila contends that his guilty plea was invalid because counsel had not requested a psychiatric evaluation to ensure that he was competent. There was no evidence to suggest that petitioner was not competent to proceed, and accordingly, counsel was not ineffective for failing to request such an examination.

## B.    *Competency*

Prohibited is the criminal prosecution of a defendant who is not competent to stand trial. Medina v. California, 505 U.S. 437, 439 (1992); Pate v. Robinson, 383 U.S. 375, 378 (1966). This competency requirement applies throughout all stages of the criminal proceedings, including the guilty plea. See, e.g., Godinez v. Moran, 509 U.S. 389, 404 (1993) (Kennedy, J., concurring) ("The Due Process Clause does not mandate different standards of competency at various stages of or for different decisions made during the criminal proceedings."). A guilty plea is valid only if separate inquiries are made to confirm both that the defendant is competent to plead guilty, and also that the plea is made "competently and intelligently." Godinez, 509 U.S. at 400; see also United States v. Nichols, 56 F.3d 403, 413 (2d Cir. 1995) ("Waiver of a constitutional right is only valid if the defendant is competent. When a court determines whether it should accept a waiver, assessing competency is only the first of a two-part inquiry.").

The test for competence is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has a 'rational as well as factual understanding of the proceedings against him.'" Godinez, 509 U.S. at 396 (quoting Dusky v. United States, 362 U.S. 402 (1960) (per curiam)). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to

24

proceed." Drope v. Missouri, 420 U.S. 162, 180 (1975). The court may consider many factors to assess competency, including: "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." Drope, 420 U.S. at 180. The court's own observations of the defendant are also relevant to its determination, though observations alone "cannot be relied upon to dispense with a hearing on that very issue" if there is substantial other evidence that the defendant is incompetent. Pate v. Robinson, 383 U.S. 375, 386 (1966); see also United States v. Vamos, 797 F.2d 1146, 1150 (2d Cir. 1986) ("[D]eference is owed to the district court's determinations based on observation of the defendant during the proceedings."). A "failure by trial counsel to indicate that the defendant had any difficulty assisting in preparation or in comprehending the nature of the proceedings 'provides substantial evidence of the defendant's competence.'" United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) (quoting Vamos, 797 F.2d at 1150); see also Drope, 420 U.S. at 177, n. 13 (stating counsel's judgment of competence is "unquestionably a factor which should be considered.").

The Due Process Clause does not require a "[competency] hearing in every instance." Nichols, 56 F.3d at 414. Under 18 U.S.C. § 4241(a), the district court must order a hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); see also United States v. Auen, 846 F.2d 872, 877 (2d Cir. 1988). A hearing is required only "when there is a reasonable ground for a [trial] court to conclude that the defendant may not be competent." Harris v. Kuhlmann, 346 F.3d 330, 350 (2d Cir. 2003).

There is insufficient evidence to support Davila's arguments that counsel should have requested a psychiatric evaluation and that the court should have convened a competency hearing. During the plea, Davila responded appropriately to the questions posed by magistrate judge. Davila was able to explain, through his interpreter, that he had some initial difficulties in understanding his attorney because of a language barrier, but that these issues were fully resolved. Davila also stated that he had not received treatment by a psychiatrist in the past, and was treated by a doctor only for a narcotic addiction while incarcerated. Before his guilty plea, Davila was asked specifically about his competency to plead. He testified that he was not under the effects of any medication or alcohol and that his mind was clear and sound.

Davila's competency was similarly evaluated during the sentencing proceeding. His conduct at the hearing and responses to the court revealed nothing to suggest he was not competent to proceed. The court recognized that the he was competent during the proceeding by observing his demeanor and engaging in a conversation; counsel agreed.

Davila has not demonstrated that the findings of competence by counsel and this court were incorrect, or that any evaluation or hearings were required. His due process rights were not violated during his guilty plea. A review of the sentencing videotape confirms these findings.

## V.     Failure to Perfect an Appeal

Davila contends that counsel rendered ineffective assistance by not perfecting the appeal before it was dismissed. The right to have trial counsel perfect an appeal extends to situations in which the client has waived the right to appeal pursuant to a plea agreement. See Campusano v. United States, 442 F.3d 770, 777 (2d Cir. 2006) ("A defendant who executes a waiver may sign away the right to appeal, but he or she does not sign away the right to the effective assistance of

counsel."); Castellanos v. United States, 26 F.3d 717, 718 (7th Cir. 1994) ("If the defendant told

his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not

of effective assistance of counsel, but of any assistance of counsel on appeal. Abandonment is a

per se violation of the sixth amendment.) (emphasis in original); Strickland, 466 U.S. at 692

("Actual or constructive denial of assistance of counsel altogether is legally presumed to result in

prejudice").

The Court of Appeals for the Second Circuit has devised the following framework to

dispose of 28 U.S.C. § 2255 petitions raising ineffective assistance of counsel on the ground that

counsel failed to perfect an appeal:

> (1) a hearing before the district court pursuant to § 2255 to determine whether the
> client requested the appeal; (2) an appeal from the district court's ruling, should
> either party seek one; and (3) a direct appeal if the defendant did in fact request that a
> notice of appeal be filed.

Campusano, 442 F.3d at 776.

The government concedes that counsel's failure to perfect the appeal prompted its

dismissal. The appropriate remedy is to reinstate the appeal. The government does not oppose

reinstatement of Davila's appeal. Davila is granted 20 days to file a notice of appeal in the

criminal case.

**VI.    Conclusion**

The motion to vacate the sentence pursuant to 28 U.S.C. § 2255 is denied in part. On

consent of the government, it is granted in part.

Davila's trial counsel was not ineffective in advising him about the plea agreement or in

reviewing the PSR. He was competent throughout the trial proceedings and knowingly and

voluntarily pled guilty to the indictment.

27

Counsel was ineffective in failing to perfect an appeal. Davila's appeal to the Court of Appeals for the Second Circuit is reinstated on consent. Habeas counsel is directed to assist Davila in perfecting the appeal.

The court grants Davila 20 days to file a notice of appeal. A certificate of appealability from this memorandum, order and judgment is denied. No constitutional error other than counsel's failure in perfecting the appeal has been shown.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 18, 2008
   Brooklyn, New York